INDIANA UNION TRACTION COMPANY *v.* BENADUM.

[No. 5,970. Filed January 8, 1908. Rehearing denied June 12, 1908.]

1. APPEAL.—*Briefs.—Waiver.*—Points not discussed are waived. p. 122.
2. MASTER AND SERVANT.—*Shipper Loading Cars for Railroad Company.*—Where the servants of one employer are performing service which another employer is under the duty of performing, such servants will be considered as being in the employ of the latter. p. 122.
3. CARRIERS.—*Stock.—Duty of Loading.—Interurban Railroads.*—In the absence of a contract or special circumstances relieving the carrier, an interurban railroad company is charged with the duty of loading live stock to be shipped over its road. p. 123.
4. SAME.—*Stock.—Loading.—Interurban Railroads.*—Where an interurban railroad company's agent solicited the plaintiff to ship his mare over its road, and plaintiff's servants assisted in the loading of such mare under the directions of such agent, such agent agreeing, upon a protest by such servants as to the safety of the appliances used, to be responsible in case of an accident, such company is liable where injury resulted from the use of such applicances. p. 123.
5. EVIDENCE.—*Assessment Lists.—Ownership.*—Assessment lists are admissible in evidence as tending to show ownership. p. 124.
6. SAME.—*Assessment Lists.—Value.*—Assessment lists are admissible in evidence as tending to show the value of the property listed. *Cincinnati, etc., R. Co.* v. *McDougal* (1886), 108 Ind. 179, and *German Mut. Ins. Co.* v. *Niewedde* (1895), 11 Ind. App. 624, distinguished. p. 125.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Action by Charles Benadum against the Indiana Union Traction Company.    From a judgment for plaintiff, defendant appeals.    *Reversed*.

*James A. Van Osdol, Louis B. Ewbank, W. A. Kittinger* and *Rollin Warner*, for appellant.

*Walter Ball* and *George H. Koons*, for appellee.

WATSON, J.—Appellee sued appellant for an injury to his racing mare, incurred while said mare was being loaded upon one of appellant's cars for shipment.    There was a trial by jury, a general verdict for appellee, assessing his damages in the sum of $500, and judgment on said verdict.

Appellant assigned as errors the overruling of the demurrers to each of the two paragraphs of the complaint, and the overruling of the motion for a new trial.    The 1. overruling of the demurrers was not discussed by appellant in its brief, therefore said assignments are waived.    *Rudisell* v. *Jennings* (1906), 38 Ind. App. 403.

Appellant contends that the negligence of appellee's own servants contributed to the injury, thereby releasing said traction company from any liability therefor.    It 2. was clearly shown that the actual work of putting said mare into the car was done by persons who were under contract of employment with appellee.    If such employes were acting as the servants of appellee in doing this work the question of contributory negligence must be considered.    But if such acts were done in the capacity of servants for appellant their negligence will not relieve appellant from liability.

It is well settled that where the employes of one party are engaged in the performance of acts for another, which acts the latter is under a duty to perform, the relation of servant is sustained to the party whose duty it is to perform such work, if such party has the control of the execution thereof.    *Indiana Iron Co.* v. *Cray* (1898), 19

Ind. App. 565; *Ohio, etc., R. Co.* v. *Davis* (1864), 23 Ind. 553, 85 Am. Dec. 477; *Crockett* v. *Calvert* (1856), 8 Ind. 127; *Clapp* v. *Kemp* (1877), 122 Mass. 481; *Byrne* v. *Kansas City, etc., R. Co.* (1894), 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693; *Powell* v. *Virginia Construction Co.* (1890), 80 Tenn. 692, 701, 13 S. W. 691, 17 Am. St. 925; *Olive* v. *Whitney Marble Co.* (1886), 103 N. Y. 292, 300, 8 N. E. 552; Wood, Master and Serv. (2d ed.), §317.

The duty to load live stock, in the absence of a special contract or special circumstances, rests primarily upon the carrier. 4 Elliott, Railroads (2d ed.), §1552; *London, etc., Ins. Co.* v. *Rome, etc., R. Co.* (1894), 144 N. Y. 200, 39 N. E. 79, 43 Am. St. 752.

The evidence shows that appellant's agent solicited appellee to ship said mare from Elwood, Indiana, to Muncie, Indiana, by way of said traction line. It was so agreed on Wednesday. The agent wished to ship the mare on Friday, but to this appellee objected, because he could not be present at that time to attend to the loading of the animal. To this objection the agent replied that he would look after the mare as if she were his own, and that appellee could trust her with him. He testified that his duties were to solicit and look after the transportation of freight. He was instructed by appellee to "go to the boys and get the mare."

Said agent directed those in charge of the mare where to take her for loading. He was present at the loading, pushed a chute out of the car, and helped to place said chute in position. Appellee's employes, who were the persons regularly in charge of the mare, saw that the chute was too pliant, and protested to said agent against attempting to load her, to which the agent replied: "I will stand it if she hurts herself." He was present during the entire time, observing the work. After he made the remark about becoming responsible for any injury, they attempted

to load her into the car, but because the chute was not sufficiently rigid, its vibrations, caused by the animal's weight, caused her to fall, and she was permanently injured.

The injury occasioned by the negligence or carelessness of the agent in loading the mare would render the appellant liable therefor, since the facts show that he was the person in charge, and the one who had the right, and whose duty it was, to control the loading of this animal. Under the law the fact as to whether such agent participated in the actual work is of little importance except to show a right of control. It was agreed and understood between appellee and appellant's agent that appellant was to have charge of the loading. Appellee's employes recognized this fact, and refused to do such work until they were assured that appellant would be responsible for any injury which might occur. In doing these acts, therefore, these persons were doing what appellant was under a duty to perform. They did them under the supervision of an agent who was there for that purpose, and who had specifically agreed so to do. In these particular acts they thus became the servants of appellant, and their negligence cannot be attributed to appellee as constituting contributory negligence by his servants.

Appellant insists further that there was reversible error by the court in instructing the jury that the assessment list of appellee, introduced by appellant, was to be considered only upon the question of the ownership of the mare and not as pertaining to her value. It is urged that such evidence was admissible as an admission by appellee to contradict his testimony as to the value of the animal.

It is well settled that assessment lists of personal property are admissible as evidence to prove the ownership of such property, by the person assessed, at the time of

5.    assessment. *Painter* v. *Hall* (1881), 75 Ind. 208; *Lefever* v. *Johnson* (1881), 79 Ind. 554; *Burket* v.

*Pheister* (1888), 114 Ind. 503; *Towns* v. *Smith* (1888), 115 Ind. 480; *Milburn* v. *Phillips* (1894), 136 Ind. 680, 693.

In the case of *Lefever* v. *Johnson, supra,* the court said: "The list was a statement in writing, signed in the firm name and sworn to by appellants; it was made out under the direction of a public officer, in pursuance of a duty enjoined by law, and is competent evidence tending to show the amount and kind of property owned by the assessed at that time."

But appellee contends that such lists are not admissible to contradict the testimony of the individual assessed relative to the value of the listed property, citing, as authorities, *Cincinnati, etc., R. Co.* v. *McDougall* (1886), 108 Ind. 179, and *German Mut. Ins. Co.* v. *Niewedde* (1895), 11 Ind. App. 624. The latter case is decided upon the authority of the former, wherein the court at page 182, speaking with reference to assessment lists, says: "Such lists are, however, not competent, either for or against the lister, as original, substantive evidence, to establish the value of a particular article of property for purposes other than taxation. Such valuations are to be regarded as having been made for a special purpose, and like admissions made for a like purpose, they are not competent as original evidence of value for any other than the purpose for which they were made, or in a case involving the question of valuation for taxation."

At the time the case of *Cincinnati, etc., R. Co.* v. *Mc-Dougall, supra,* was decided the statutes (§6336 R. S. 1881, Acts 1881 (s. s.), p. 211, §68) provided only that the party assessed make affidavit to the fact that such list contained a correct list of his personal property. By the act of 1891 (Acts 1891, pp. 199, 217, §53, §8463 Burns 1901) this provision was changed. The party assessed was required to make additional affidavit as follows: "I further swear that I have, to the best of my knowledge and judg-

ment, valued said property at its true cash value, by which I mean the usual selling price, being the price which could be obtained for said property at private sale, and not at forced or auction sale." Thus an assessment list becomes the sworn statement of the party assessed, not only as to ownership, but as to the cash value of the listed property as well. Such evidence is clearly relevant, and, unless so remote in point of time as to be of no practical utility, is admissible on the question of the value of such property. Each reason given in *Lefever* v. *Johnson, supra,* for admitting assessment lists to prove ownership applies with equal force to the question of value. The case of the *German Mut. Ins. Co.* v. *Niewedde, supra,* failed to note the change in the law, and therefore does not apply to the question here considered.

It has been held in many other jurisdictions that such a sworn statement is admissible either as original evidence of value or to contradict the assessed party's testimony as to the value of the listed property. *Birmingham, etc., R. Co.* v. *Smith* (1889), 89 Ala. 305, 7 South. 634; *Beckwith* v. *Talbot* (1875), 2 Colo. 639; *Vernon Shell Road Co.* v. *Mayor, etc.* (1894), 95 Ga. 387, 22 S. E. 625; *Mifflin Bridge Co.* v. *County of Juniata* (1891), 144 Pa. St. 365, 22 Atl. 896, 13 L. R. A. 431.

For these reasons we think appellant was entitled to have appellee's sworn statement of the value of the mare, made in April, 1903, submitted to the jury on the question of her value in August, 1903, when the injury occurred; but it is not conclusive. Such evidence may be considered by the jury for what it is worth, in connection with other evidence, as throwing light upon the value of the mare.

The court erred in instructing the jury that such evidence should not be considered as to the question of value. This case is reversed and remanded, with instructions to grant the motion for a new trial,